IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| B-Y STRAWBERRY SQUARE, LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CV. NO. SA-13-CV-00316-DAE |
| ROSS DRESS FOR LESS, INC., d/b/a dd's Discount Stores, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFF'S MOTION TO REMAND

On July 31, 2013, the Court heard the Motion to Remand brought by Plaintiff B-Y Strawberry Square, Ltd. ("B-Y"). (Doc. # 2.) Natalie F. Wilson, Esq., and Peter L. Kilpatrick, Esq., appeared at the hearing on behalf of B-Y; Paul R. Genender, Esq., and Nathan D. Pearman, Esq., appeared at the hearing on behalf of Defendant Ross Dress for Less, Inc. ("Ross"). After reviewing the motion and the supporting and opposing memoranda, the Court **DENIES** B-Y's Motion to Remand.

BACKGROUND

On September 23, 2009, Ross and B-Y entered into a lease agreement (the "Lease") for around 24,000 square feet of retail space in the Strawberry

1

Square Shopping Center, located at 2921 Boca Chica Blvd., Brownsville, Texas 78521 (the "Center"). ("Lease," Doc. # 1-1, Ex. B.)  The Lease provides for a ten-year term with options for renewal for another twenty years.  (Id. at § 1.5.)  Under the Lease, Ross is required to pay Minimum Monthly Rent plus common-area maintenance charges and a pro rata share of property taxes and other fees ("Reimbursements").  (See id. §§ 1.6, 1.8, 6.1, 6.2, 7.4, 8.2, 9.1.)  Section 1.7.1 of the Lease provides that certain "Required Co-Tenants"—namely, the retail stores "Beall's" and "Melrose"—operate within the Center, in no less than a certain required leasable floor area.  (Id. § 1.7.)  According to Ross, the Lease requires that Melrose operate in Suite 1003 of the Center, with no less than 10,000 square feet of retail space, and that Beall's operate in Suite 1007 of the Center, with no less than 16,000 square feet of retail space. (Doc. # 4 ¶ 1.)  B-Y disputes that the terms of the Lease compel a Required Co-Tenant to be "rooted" to a particular suite within the Center.  ("Petition," Doc. # 1-1, Ex. A.)

If the Required Co-Tenancy provision under § 1.7.1 is violated, a "Reduced Occupancy Period" is triggered.  (Lease § 6.1.3.)  A Reduced Occupancy Period allows Ross to pay "Substitute Rent" in lieu of "Minimum Rent and Reimbursements."  (See id.)  The Lease defines Substitute Rent as "the lesser of (a) Minimum Rent, or (b) two percent (2%) of Tenant's Gross Sales during the

preceding month." (Id. § 1.10.) Importantly, Ross is not required to pay any Reimbursements during a Reduced Occupancy Period. (See id.)

On February 8, 2011, Ross executed a waiver whereby it agreed that B-Y could lease Suite 1003—the space occupied by Required Co-Tenant Melrose under the Lease—to Planet Fitness. (Petition, Ex. 2.) Although Planet Fitness was scheduled to take over Suite 1003, it ultimately failed to reach a lease agreement with B-Y. (Petition ¶ 19.)

In April 2011, Melrose moved from Suite 1003 to a larger space in the Center. (Doc. # 4 ¶ 2.) B-Y did not provide advance notice of the move to Ross. (Id.) Suite 1003 remained unoccupied for several months until B-Y found a new tenant, a restaurant named China Buffet. (Petition ¶ 20.)

In January 2013, more than a year after Melrose changed locations within the Center, Ross informed B-Y that it considered the relocation and the absence of a "national or regional retailer"[1] in Suite 1003 to be a violation of the Required Co-Tenant provision of the Lease. (See Doc. # 4 ¶ 2; Petition ¶ 21.) Ross continued to pay Minimum Rent and Reimbursements while protesting that it

---

[1] Section 1.7.1 of the Lease specifies that either of the Required Co-Tenants may be "replaced" by a "national retailer or regional retailer with at least (10) stores," provided certain other criteria are met. (Lease § 1.7.1.) The section also provides that the term "retailer" excludes "restaurant use." (Id.)

was entitled to pay only Substitute Rent due to the alleged breach. (Doc. # 4 ¶ 2.) In a March 6, 2013 letter, Ross threatened to pay only Substitute Rent and to invoice B-Y for overpayments of rent. (Petition, Ex. 4.) In its own letter, B-Y denied any breach had occurred, explaining that Melrose continued to function as a Required Co-Tenant because Melrose remained in the Center and had relocated to a space with more than the required square footage. (See id.; Petition ¶ 28.)

On March 18, 2013, B-Y filed suit against Ross in the 224th Judicial District Court of Bexar County, Texas. (Petition.) B-Y's state-court petition brings a cause of action under the Texas Declaratory Judgment Act, codified in Chapter 37 of the Texas Civil Practice and Remedies Code, to clarify the parties' rights under the Lease. (Id. ¶ 27.) More specifically, the petition seeks declaratory relief that:

> 1. Melrose relocating from space 3 to space 8 in the Center in 2011 did not result in a replacement or loss of Melrose as a Co-Tenant under the lease with [Ross] such that [Ross] is entitled to pay only Substitute Rent under the lease.
>
> 2. [B-Y] leasing to a restaurant in space 3 and continuing to lease to China Buffet in space 3 is not a breach of the lease by [B-Y] or a triggering event justifying [Ross] paying anything less than the full minimum rent and fees and charges owed under the lease.
>
> 3. Only in the event declaratory relief is not granted per 1) and 2) above, [B-Y] seeks declaratory relief that as a result of [Ross']

>
> conduct it has waived or should be estopped from paying only Substitute Rent under the lease, and
>
> 4. [B-Y] as Landlord has maintained more than a 60% occupancy such that [Ross] has no rights to pay any less than the full minimum rent, CAM, tax reimbursement, and charges under the lease.

(Id. at ¶ 28.)  B-Y also seeks attorneys' fees under Chapter 37 of the Texas Civil Practice and Remedies Code.  (Id. ¶ 29.)

On April 16, 2013, Ross removed the case to this Court on the basis of diversity jurisdiction.  (Doc. # 1.)  On April 24, 2013, B-Y filed the instant Motion to Remand, seeking to return the action to state court.  (Doc. # 2.)  Soon thereafter, Ross filed a response in opposition to the motion.  (Doc. # 4.)

## STANDARD OF REVIEW

A defendant may remove a case from state to federal court if the case could have been filed in federal court originally.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)).  To determine whether jurisdiction is present for removal, the court considers the claims in the state court petition as they existed at the time of removal.  Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995).  Any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."  Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000).  A district court

must remand a case if, at any time before final judgment, it appears the court lacks subject-matter jurisdiction.  See 28 U.S.C. § 1447(c); Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 571 (2004).

The removing party bears the burden of establishing that federal jurisdiction exists.  De Aguilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir. 1995).  Where a plaintiff contends the amount in controversy is insufficient in a diversity action, the Court must first examine the factual allegations of the complaint to determine whether it is "facially apparent" that the amount in controversy requirement has been satisfied.  White v. FCI USA, Inc., 319 F.3d 672, 675 (5th Cir. 2003) (citation omitted).  If it is not apparent, the Court may then rely on "summary judgment-type" evidence to ascertain the amount in controversy.  Id.

## DISCUSSION

I.  Ripeness

At the hearing, the Court expressed concern that this declaratory judgment action may not be ripe for adjudication.  The Court now examines this question before addressing the merits of B-Y's Motion to Remand.

"[R]ipeness is a constitutional prerequisite to the exercise of jurisdiction."  Shields v. Norton, 289 F.3d 832, 835 (5th Cir. 2002).  Article III of the Constitution restricts federal courts to adjudicating actual "cases" and

"controversies." United Transp. Union v. Foster, 205 F.3d 851, 857 (5th Cir. 2000). "A case or controversy must be ripe for decision, meaning that it must not be premature or speculative." Shields, 289 F.3d at 835. "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. The key considerations are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 833 F.2d 583, 586–87 (5th Cir. 1987) (citations omitted) (internal quotation marks omitted). The Fifth Circuit has recognized that applying the ripeness doctrine in the declaratory judgment context "presents a unique challenge" because "declaratory actions contemplate an ex ante determination of rights that exists in some tension with traditional notions of ripeness." Orix Credit Alliance, Inc. v. Wolfe, 212 F.3d 891, 896 (5th Cir. 2000) (citations omitted) (internal quotation marks omitted). Nonetheless, a declaratory judgment action, like any other action, must be ripe in order to be justiciable. Id.

A declaratory judgment action is ripe for adjudication only where an "actual controversy" exists. See 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."). An "actual controversy" is present where "a substantial controversy

7

of sufficient immediacy and reality exists between parties having adverse legal interests."  Venator Grp. Specialty, Inc. v. Matthew/Muniot Family, LLC., 322 F.3d 835, 838 (5th Cir. 2003) (citing Orix, 212 F.3d at 896).  Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis.  Orix, 212 F.3d at 896.

      Here, the Court finds that an actual, justiciable controversy exists between B-Y and Ross.  B-Y and Ross disagree over the proper interpretation of the terms of the Lease and over whether B-Y breached the Lease by moving Melrose from Suite 1003.  This is not an abstract or hypothetical disagreement.  However, whether there is "sufficient immediacy" to the controversy is a close call because Ross continues to pay full rent as if there were no breach and because Ross has not threatened to sue B-Y for breach of contract.  Nonetheless, Ross has maintained in several emails, and at least one letter, that B-Y has breached the Lease such that Ross is entitled to pay Substitute Rent.  (See Petition, Exs. 3–4.)  Ross has repeatedly refused to retract this assertion and has also threatened to invoice B-Y for alleged overpayments of rent.  (Id. Ex. 4.)  Because of the uncertainty over the interpretation of the Lease, B-Y is unable to determine whether it may move tenants to different spaces within the Center, which hampers its ability to enter into leases with new stores and to manage the shopping center.

Due to the direct, negative impact of the conflict on B-Y's ability to run its business, there is sufficient immediacy to the controversy to sustain federal jurisdiction. Indeed, because a breach of contract action is not available to B-Y as long as Ross continues to pay Minimum Rent and Reimbursements, a declaratory judgment action properly affords B-Y "equitable relief when legal relief is not yet available" thereby "avoid[ing] inequities which might result from a delay in assessing the parties' legal obligations." See Venator Grp. Specialty, 322 F.3d at 840.

II.     Motion to Remand

Ross removed this case to federal court on the basis of diversity jurisdiction. (Doc. # 1.) "Diversity jurisdiction under 28 U.S.C. § 1332 only exists where [1] the parties are citizens of different states and [2] the amount in controversy exceeds $75,000." White, 319 F.3d at 674. Here, the requirement of diversity of citizenship is satisfied because B-Y is a citizen of Texas and Ross is a citizen of both Virginia and California. (See Doc. # 1 ¶¶ 11–12; Petition ¶ 2.) However, in the Motion to Remand, B-Y contends that the second requirement of diversity jurisdiction is not met because the amount in controversy does not exceed $75,000. More specifically, B-Y argues that, because the state-court petition only seeks declaratory relief and up to $65,000 in attorneys' fees, the jurisdictional

minimum is not satisfied.

In an action for declaratory or injunctive relief, the amount in controversy is "measured by the value of the object of the litigation." Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir. 1983); Hunt v. WA State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). Stated differently, the amount in controversy in such cases is "the value of the right to be protected or the extent of the injury to be prevented." St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1252–53 (5th Cir. 1998) (citation omitted). When a party seeks the cancellation or enforcement of a future obligation, the value of that future obligation is considered in determining the amount in controversy. See Duderwicz v. Sweetwater Sav. Ass'n, 595 F.2d 1008, 1014 (5th Cir. 1979) ("[T]he value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover, but by the judgment's pecuniary consequence to those involved in the litigation."); see also Kemp v. Perma-Glaze, Inc., No. 94–1012, 1994 WL 236450, at *2 (E.D. La. May 25, 1994) (considering the amount of future payments over the remaining term of license agreements where the petition sought to cancel the agreements); Harger v. Burger King Corp., 729 F. Supp. 1579, 1580 (M.D. La. 1990) (considering the amount of future installments when plaintiffs sought a declaration that a lease continued in force).

B-Y argues that the amount in controversy requirement is not satisfied because a declaratory judgment that Melrose remains a Required Co-Tenant under the Lease will not result in any damages to B-Y, principally because Ross has continued to pay Minimum Rent and Reimbursements.  However, if B-Y violated the Required Co-Tenancy provision by moving Melrose, Ross would only be obligated to pay Substitute Rent under the Lease rather than Minimum Rent and Reimbursements.  Thus, the difference between Minimum Rent, plus Reimbursements, and Substitute Rent is "the value of the right to be protected or the extent of the injury to be prevented."  See Greenberg, 134 F.3d at 1252–53.

Ross has paid approximately $58,000 per year in Reimbursements alone under the Lease.  (See "Decl. of John Fox," Doc. # 1-1, Ex. C ¶ 4.)  Accordingly, for the two years from April 2011 until the present, Ross would have improperly paid over $100,000.00 in Reimbursements.  This well exceeds the jurisdictional minimum.  Moreover, to the extent B-Y asserts Ross waived any right to recover rent paid before 2013, the jurisdictional minimum is still satisfied because, as discussed above, it is proper to consider the value of future obligations under the Lease, which expires in 2020.  Taking into account the likely Reimbursements for 2013 through 2019, the amount in controversy is at a minimum over $300,000.  (See Doc. # 4 ¶ 8 n.2.)  Accordingly, Ross has shown by

a preponderance of the evidence that the amount in controversy exceeds $75,000. The Court finds that it has diversity jurisdiction over this case and, therefore, DENIES the Motion to Remand.

III.    Attorneys' Fees

B-Y argues that it is entitled to attorneys' fees under 28 U.S.C. § 1447(c) because Ross had no "objectively reasonable basis" for removal. (Doc. # 2 ¶ 20.) It maintains that "Ross only attempted to measure the amount in controversy by calculating its hypothetical counterclaims." (Id.) However, Ross did not include the value of any counterclaims in calculations to determine the amount in controversy and, for reasons given above, the jurisdictional minimum is satisfied in this case. Accordingly, the Court denies B-Y's request for attorneys' fees.

## CONCLUSION

Based on the foregoing analysis, the Court **DENIES** B-Y's Motion to Remand. (Doc. # 2.)

IT IS SO ORDERED.

DATED: San Antonio, Texas, August 14, 2013.

_____
David Alan Ezra
Senior United States District Judge